# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KYISHA JONES,

        Plaintiff,

v.                                                      Case No. 14-12107

JEH JOHNSON, SECRETARY,
DEPARTMENT OF HOMELAND SECURITY,
ET AL.,

        Defendants.

_____/

## ORDER AND OPINION GRANTING DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

This action comprises an unusually voluminous collection of twenty-four claims brought by Plaintiff Kyisha Jones, a Customs and Border Protection officer, against Defendants the United State of America and its agency the Department of Homeland Security ("DHS") (and various divisions therein); Jeh Johnson, Secretary of Homeland Security; and Alexander McLellan, a special agent in DHS' Office of Inspector General ("OIG"). Pending before the court is Defendants' Motion to Dismiss and For Summary Judgment.[1] (Dkt. # 40.) Plaintiff has responded, (Dkt. # 42), and Defendants have replied, (Dkt. # 47). The court determines that no hearing is necessary. *See* E.D. Mich. L.R. 7.1(f)(2). For the following reasons the court will grant Defendants Motion.

---

[1] Because the court has relied only on the pleadings and material referenced in the Amended Complaint and central to Plaintiff's claims, the court will consider the Motion only under the Rule 12 standard for a motion to dismiss.

## I. BACKGROUND

### A. Employment and EEOC Charges

In June of 2002, Plaintiff began working for DHS in a GS-5 level position.[2]

Eventually Plaintiff applied for a position as a Customs and Border Protection ("CBP")

Enforcement Officer and was hired for a GS-11 position, which was later elevated to a

GS-12 position. (Dkt. # 15, Pg. ID 217-18.)

On August 27, 2007, Plaintiff was formally disciplined for failing to follow a

supervisor's order and was placed on suspension for five days. Plaintiff says that after

being disciplined, she received awards, outstanding performance evaluations, and was

appointed team leader of about five other officers. (*Id.* at Pg. ID 219.)

In 2011 Plaintiff applied for a supervisory position, but in June of that year the

available positions were awarded to "primarily white, male Agency employees" (one of

those hired was a white female). (*Id.* at Pg. ID 220-21.) DHS explained, at that time, that

she was passed up for promotion because of her disciplinary record. (*Id.*) In August, the

Agency sought to fill more supervisory positions and considered the same pool of

applicants from the June round of hiring. For the August positions, CBP selected,

among others, an African American male who had been suspended previously and an

African American female with no disciplinary record. (*Id.* at Pg. ID 221.) Plaintiff points

out that some of the white men hired were subordinate to her and that "Defendant

Agency could not provide Plaintiff with an explanation" for not hiring her after the second

round. (*Id.*)

---

[2] At the time the agency was known as the Immigration and Naturalization Service ("INS"), but soon thereafter DHS was created and assumed INS functions and responsibilities.

2

On September 7, 2011, Plaintiff filed a charge with the EEOC alleging gender discrimination based on being passed up for the supervisory positions. (*Id.* at Pg. ID 222.) On December 27, 2011, Plaintiff was notified that the investigation was complete and that she could request a hearing or a final agency decision, but she also alleges that she was not provided a complete copy of the EEOC investigative file. Plaintiff opted to receive a final agency decision, and on March 13, 2012, the EEOC issued its determination that Plaintiff was not discriminated against. Plaintiff's Amended Complaint notes that she did not timely receive the agency decision because it was sent only by email to her work address, delivered while she was on paid administrative leave.[3] (*Id.*) Thus, she was unaware that her charge had been dismissed. (*Id.* at Pg. ID 223.)

In June of 2012, while on administrative leave, Plaintiff applied and was again denied a supervisory position. After this denial, Plaintiff requested a "status update" with the EEOC around March of 2013 on the charge she had filed and sought to amend the charge to add allegations of race discrimination and retaliation claims. The latter claim was based on the below-described OIG investigation into alleged criminal conduct. During the phone call seeking a status update, Plaintiff was informed that her charge had been dismissed in March of 2012. (*Id.*) The EEOC forwarded the agency determination and investigative file to Plaintiff on March 12, 2013, and on April 9, 2013 Plaintiff filed an appeal. The appeal was still pending when the Amended Complaint was filed. (*Id.* at Pg. ID 224.)

---

[3] As described below, *see infra* I.C., Plaintiff was placed on paid administrative leave after she was charged with various fraud related crimes.

3

Along with appealing the final agency decision, Plaintiff also filed a second EEOC charge alleging race and gender discrimination and retaliation on April 9, 2013. (*Id.* at Pg. ID 234.) The new charge and amendments to the previous charge were based on the same events as her previous charge, except that she alleges she added facts gleaned from the investigatory file she received in March of 2013. She alleges that she discovered, from the investigatory file, "that CBP defended her gender discrimination allegations by basically describing her as a stereotypical, angry black female." (*Id.* at Pg. ID 235.) The EEOC dismissed that charge on July 26, 2013 and Plaintiff appealed the dismissal on September 5, 2013. On February 27, 2014, Plaintiff was served a decision affirming the final agency decision. (*Id.*)

## B. OIG Criminal Investigation

As mentioned above, some of the allegations lodged with the EEOC concerned a criminal investigation of Plaintiff related to her CBP employment and the alleged theft of Plaintiff's identity.

During Plaintiff's employment she started seeking out investment opportunities and "[a]s a result of her interest in becoming an investor, Plaintiff became the victim of identity theft" that "resulted in upwards of $1 million dollars in debt being credited [sic] to her name." (*Id.* at Pg. ID 219-20.) After she became aware of the theft, Plaintiff filed a police report at the City of Warren Police Department. (*Id.* at Pg. ID 220.) Concerning the timing of these events, Plaintiff's Complaint states only that she became interested in investing in 2006, and that "[a]fter hiring an attorney, and prior to December 2010, all credit accounts were cleared, Plaintiff was relieved from the debt and her good credit was restored." (*Id.*) The Complaint does not mention when the identity theft occurred or

4

when Plaintiff filed the police report. However, Defendants attached it to their Motion to Dismiss; the report was filed on July 6, 2007. (Dkt. # 21-17.)

In December 2009, OIG, through Defendant McLellan, interviewed Plaintiff in relation to her reported identity theft. (Dkt. # 15, Pg. ID 224.) In December 2011, Agent McLellan again interviewed Plaintiff about the identity theft. In this second interview, Agent McLellan also asked Plaintiff about smuggling operations at the border and accused Plaintiff of being involved in smuggling activities. Plaintiff alleges that Agent McLellan threatened to arrest her for fraud related to her identity theft claims if she did not tell him about the smuggling and that he failed to inform her of any of her rights as a public employee under investigation. (*Id.* at Pg. ID 224-25.)

### C. Federal Fraud Charges

On January 23, 2012, the United States filed a criminal complaint, under seal, against Plaintiff alleging mail fraud, wire fraud, bank fraud, false statements, and false statements in a credit application. Finding probable cause for an arrest, the magistrate judge issued an arrest warrant. On January 25, 2012, Plaintiff was told to report to OIG again, and upon her arrival Agent McLellan arrested Plaintiff. (*Id.* at Pg. ID 228-29.) While under arrest, Plaintiff alleges that Agent McLellan and AUSA Erick Straus interrogated her about the smuggling matter but did not read her *Miranda* rights or related rights provided to public employees. (*Id.* at Pg. ID 230.) The complaint was unsealed on January 26, 2012. Shortly thereafter, on January 31, 2012, CBP placed Plaintiff on paid administrative leave. Though AUSA Straus moved to dismiss the criminal complaint on February 10, 2012, Plaintiff has remained on paid administrative leave until at least the filing of the Amended Complaint in this matter. (*Id.* at Pg. ID 231-

5

32.) Plaintiff also alleges that at various times in 2013 and 2014, Agent McLellan has "attempted to get Plaintiff to provide information about smuggling" and has not informed her of her rights. (*Id.* at Pf. ID 233-34.) Plaintiff also alleges in her Amended Complaint that Agent McLellan interviewed her about the fraud claims on May 29, 2014, two days after she filed the original Complaint in this matter. (*Id.* at Pg. ID 237.)

### D. State False Pretenses Charge

Sometime after the federal criminal case came to a close, around July 2013, Agent McLellan handed over information to the West Bloomfield Police Department so that they could potentially prosecute a mortgage fraud case at the state level. (*Id.* at Pg. ID 237.) On July 17, 2014, a West Bloomfield detective informed Plaintiff that a warrant was being issued for her arrest for false pretenses, and on July 18, 2014 Plaintiff turned herself in at the West Bloomfield Police Department. (*Id.*) Agent McLellan was present at the police station and the courthouse for her arraignment. (*Id.* at Pg. ID 238.) Plaintiff alleges that the state conducted no independent investigation of the false pretenses matter, and relied solely on the information given to them by Agent McLellan. Agent McLellan testified at Plaintiff's preliminary exam, which was continued until October 21, 2014, when the presiding District Judge bound Plaintiff over for trial. (*Id.* at Pg. ID 239.)

On September 18, 2015, Plaintiff entered a plea of nolo contendere to a misdemeanor charge of false pretenses more than $200 but less than $1,000, pursuant to Michigan Comp. Laws § 750.2183A. (Dkt. # 40-1.) The state court sentenced Plaintiff to pay fines totaling $180 and to serve one day in jail with credit for one day previously served. (*Id.*)

6

### E. Procedural History

Plaintiff filed her Complaint initiating this action on May 27, 2014. (Dkt. # 1.) In lieu of answering, Defendants filed a Motion to Dismiss and for Summary Judgment, (Dkt. # 12), to which Plaintiff responded by filing an Amended Complaint, (Dkt. # 15). The court denied Defendants' motion without prejudice in light of the amendment. (Dkt. # 17). On December 8, 2014, Defendants filed another Motion to Dismiss and for Summary Judgment. (Dkt. # 20.) Plaintiff also filed a motion seeking review of the Attorney General's certificate deeming Defendant McLellan to be acting in the scope of his employment. (Dkt. # 29.) During a telephonic status conference on May 20, 2015, the parties informed the court that the state criminal matter pending against Plaintiff was proceeding to trial. (Dkt. # 36.) Because some of the matters in this civil litigation arise from and are related to the facts underlying the criminal prosecution, the parties agreed that this case should be stayed pending resolution of the state criminal case. (*Id.* at Pg. ID 1014.) Additionally the pending motions were terminated without prejudice, leaving the parties the opportunity to file updated motions after the conclusion of Plaintiff's state prosecution. (*Id.*) On November 6, 2015 the parties informed the court that Plaintiff had entered a no-contest plea to a low-value misdemeanor false pretenses charge and was sentenced to pay a fine. (Dkt. # 38.) Given the resolution of the Michigan matter, the court set a briefing schedule for the renewed dispositive motions. (*Id.*) Defendants filed their renewed Motion to Dismiss and for Summary Judgment, (Dkt # 40), to which Plaintiff has responded, (Dkt. # 42), and Defendants have replied, (Dkt. # 47).

### II. STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a complaint for lack of subject matter jurisdiction. When a defendant challenges subject matter jurisdiction, the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

Federal Rule of Civil Procedure 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief may be granted. Under the Rule, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pleaded factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). This standard requires more than bare assertions of legal conclusions. *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

However, to survive a motion to dismiss, a complaint must provide sufficient facts to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing

8

*Twombly*, 550 U.S. at 555.) Additionally, on a motion to dismiss, a court is usually limited to the complaint and attached exhibits, but it may also consider "public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Erie County v. Morton Salt*, *Inc.*, 702 F.3d 860, 863 (6th Cir. 2012) (quoting *Bassett v. Nat'l Coll. Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008)).

## III. DISCUSSION

### A. Title VII Claims

#### 1. Count I - Title VII Sex Discrimination Claim

Defendants allege that Plaintiff failed to properly exhaust administrative remedies before she brought her Title VII claims. In order to bring a claim under Title VII, Congress has required "a plaintiff's satisfaction of 'rigorous administrative exhaustion requirements and time limitations.'" *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002) (quoting *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 833 (1976)). One such requirement is that an aggrieved employee must initiate contact with an EEO counselor "within 45 days of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action." *Id.* (quoting 29 C.F.R. § 1614.105(a)(1)). Plaintiff's sex discrimination claims are based on failures to promote her in June of 2011, August of 2011, and June of 2012. Defendants argue that Plaintiff timely contacted an EEOC counselor only with respect to the August 2011 round of hiring (which resulted in her filing the September 2011 EEOC charge) and that the others must be dismissed.

9

Plaintiff fails to respond in any way to this argument with regard to her sex-discrimination claims. "It is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Cunningham v. Tenn. Cancer Specialists, PLLC*, 957 F. Supp. 2d 899, 921 (E.D. Tenn 2013) (quoting *Rouse v. Caruso*, No. 06-CV-10961-DT, 2011 WL 918327, at *18 (E.D. Mich. Feb. 18, 2011)). Thus the court deems Plaintiff to have conceded this point. Even if it were not conceded, it is clear from the Complaint that Defendants are correct. Plaintiff was timely in contacting the EEOC only with respect to the August 2011 round of hiring. The other sex discrimination claims fail.

This leaves the question of whether Plaintiff's claim regarding the August 2011 hiring can survive Defendants' Motion to Dismiss. The court concludes that it cannot. In order to establish a claim on a failure to promote theory, a plaintiff must demonstrate that "(1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for promotion was denied." *Nguyen v. City of Cleveland*, 229 F.3d 559, 562-63 (6th Cir. 2000). Plaintiff faces an uphill battle in finding a similarly situated comparator who received the job, because Plaintiff's disciplinary record set her apart from other employees. Attempting to overcome this hurdle, Plaintiff points to one African-American male who was hired and had a three-day suspension on his employment record. However, this employee is not a satisfactory comparator because the infraction he committed was qualitatively different and the agency viewed it

10

as such. The declaration of Roderick Blanchard, the Detroit Port Director, clarifies that Plaintiff was suspended for five days for failure to obey a superior's order, while the alleged comparator was suspended for three days for failure to report outside employment that would have been approved had it been reported. (Dkt. # 21, Pg. ID 392.)[4] The agency viewed the latter as a purely technical violation not to be considered for promotion review, while it viewed Plaintiff's infraction as non-technical and reflecting poorly on her leadership abilities. (*Id.*) As the only alleged comparator was not similarly situated, Plaintiff has failed on an essential element of her claim. The claim will be dismissed.

### 2. Count II and III - Title VII Racial Discrimination and Retaliation Claims

Because Plaintiff's 2011 EEOC complaint contained only gender discrimination claims, Defendants assert that Plaintiff did not timely contact the EEOC regarding her race and retaliation claims, and that those claims must also be dismissed. Plaintiff acknowledges that she did not fulfil this requirement as to her race and retaliation claims, but contends that 29 C.F.R. § 1614.106(d) allows amendments to complaints to add new, related claims "at any time prior to the conclusion of the investigation" and that the 45 day requirement does not apply to her race and retaliation amendments. (Dkt. # 42, Pg. ID 1204.) Because Plaintiff allegedly amended her complaint in 2013 to include the related race and retaliation claims—before she learned of the final agency determination rejecting her complaint—she argues those claims survive.

---

[4] While the declaration is before the court only because it was attached to Defendants' Motion, it is properly considered in the court's Rule 12(b)(6) analysis because the EEOC investigatory file (of which the declaration is a part) was referred to in Plaintiff's Amended Complaint (Dkt. # 15, Pg. ID 221, 224, 235) and is central to her claims. *See Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997).

But this argument fails because, as Defendants point out, she did not amend her complaint before the end of the EEOC *investigation*, as required by the regulation. Plaintiff conflates the end of the investigation with the end of agency review, which culminates in a final agency determination. The regulation is clear, as is the agency guidance cited by Plaintiff:

> At any time prior to the agency's mailing of the notice required by § 1614.108(f) at the conclusion of the investigation, § 1614.106(d) permits a complainant to amend a pending EEO complaint to add claims that are like or related to those claim(s) raised in the pending complaint. There is no requirement that the complainant seek counseling on these new claims.

(Dkt. # 42, Pg. ID 1205.) The "notice required by § 1614.108(f)" is the document that provides notice of the completion of the investigation and allows the complainant to select either a hearing and decision from an administrative judge or an immediate final decision from the agency. Plaintiff admits in her Complaint that she received that notice on December 27, 2011—long before her attempted 2013 amendments—and on January 13, 2012 opted to receive an immediate final decision. (Dkt. # 15, Pg. ID 222.) Thus, Plaintiff's amendments were untimely, and she failed to exhaust properly the administrative remedies as to these claims. The race and retaliation claims must be dismissed.

## B. Constitutional Tort Claims

### 1. Constitutional Tort Claims Against the United States

Plaintiff brings a number of constitutional tort claims against the United States and Jeh Johnson in his official capacity as Secretary of Homeland Security:[5] Count IV for due process violations; Count VI for racial discrimination in violation of the Equal Protection Clause; Count VIII for abuse of process in violation of the Equal Protection Clause; Count X for false arrest and imprisonment in violation of the Fourth Amendment; Count XII for malicious prosecution in violation of the Fourth Amendment; Count XIV for failure to investigate in violation of the Equal Protection Clause; Counts XVII and XXI for negligent and intentional infliction of emotional distress in violation of the Equal Protection Clause. These claims must all be dismissed as no cause of action may lie against a federal agency for monetary damages that stems from the agency's constitutional violations. *FDIC v. Meyer*, 510 U.S. 471, 486 (1994).

### 2. Constitutional Tort Claims Against Alexander McClellan

While Plaintiff's constitutional tort claims against the United States and its agencies must be dismissed, Plaintiff also asserts all the same claims against Officer Alexander McCellan in his individual capacity. A plaintiff may bring an action under *Bivens* when she alleges that a federal employee has violated her constitutional rights. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389-90 (1971).

### a. Count V - Due Process Claim

---

[5] A suit against an official "in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, a suit against Jeh Johnson in his official capacity as Secretary of DHS is a suit against the agency itself.

Count V of the Amended Complaint asserts a *Bivens* claim for Agent McClellan's alleged failure to inform Plaintiff of her rights under *Miranda*, *Garrity*, *Kalkines*, and *NASA v. FLRA*. This claim fails.

As Defendants point out, the *Miranda* decision does not establish a constitutional right, but instead establishes an "exclusionary rule as a prophylactic measure to prevent violations of the right protected by the text of the Self-Incrimination Clause." *Chavez v. Martinez*, 538 U.S. 760, 772 (2003). A failure to read *Miranda* warnings does not itself "violate" a constitutional right and cannot form the basis of a *Bivens* claim. *See id.* Similarly, Defendants argue that *Garrity* and *Kalkines* do not establish a constitutional duty to inform an employee of specific rights, but instead preclude the use of statements procured by threat of termination in a later criminal prosecution. (See Dkt. # 40, Pg. ID 1091.) Defendants argue finally that the Civil Service Reform Act, 5 U.S.C. § 7121, provides a remedy for, and thus preempts any constitutional claim under *Bivens* related to, a violation of the rights addressed in *NASA v. FLRA*, 527 U.S. 229 (1999) (employees are entitled to a union representative during certain covered investigations). Plaintiff, in her Response, offers no argument on this claim—for good reason—and the court considers Plaintiff to have conceded these points and Count V. *See Cunningham*, 957 F. Supp. 2d at 921.

### b. Count VII - Race Discrimination under the Fifth Amendment

In addition to her Title VII claims, Plaintiff brings a claim, for "race discrimination in violation of the equal protection clause as applied under the 5th Amendment." (Dkt. # 15, Pg. ID 247.) To the extent this Fifth Amendment claim is based

14

on discrimination in relation to her federal employment, Title VII provides the exclusive remedy for such concerns. *Brown*, 425 U.S. at 835.

In her Response, Plaintiffs asserts that this claim is based on Agent McClellan's selective prosecution of her, based on race, regarding the investigation of smuggling activities. (Dkt. # 42, Pg. ID 1193-94.) In order to state a cause of action for selective prosecution or enforcement based on race, a plaintiff must show that an officer selected her for prosecution but not others similarly situated but of another race, and that the prosecution was initiated with a discriminatory purpose and had a discriminatory effect. *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir. 1991). However, Plaintiff has advanced nothing more than conclusory allegations as to this claim. In fact, in the Complaint, Plaintiff notes that Agent McLellan informed Plaintiff that he was investigating her because of a tip he received that a "curvaceous, middle-aged woman" named "Kisha" was involved in the smuggling crimes he was investigating. While Plaintiff disputes that she is curvaceous, she is a middle-aged woman and her name, Kyisha, is obviously close to the name Kisha.[6]  Further, Agent McLellan already suspected Plaintiff of illegal activity related to her alleged identity theft and mortgage fraud.

To sustain this claim, "it is an absolute requirement that the plaintiff make at least a *prima facie* showing that similarly situated persons outside her category were not prosecuted." *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997). Here, Plaintiff has failed to allege that there existed any similarly situated person who was not

---

[6] Plaintiff alleges that Agent McClellan made up the fact that the tip included a reference to the name "Kisha," but offers no support for that allegation. However, even ignoring the Kisha/Kyisha fact, the claim still fails for the reasons stated.

prosecuted or investigated. Indeed, Plaintiff would be hard pressed to find somebody given the highly specific tip that, she says, lead McLellan to Plaintiff and her pre-existing history of suspected fraud. Further, these allegations are related to an *investigation* for smuggling, not any actual prosecution. Plaintiff was never charged for the alleged smuggling activity; she was charged only in connection with the mortgage fraud for which she was also being investigated. Independently and considered together, these flaws in Plaintiff's claim lead to the inescapable conclusion that she has failed to state a claim plausible on its face. Plaintiff's claim for selective enforcement is dismissed.

### c. Count IX - Equal Protection Abuse of Process Claim

The court also agrees with Defendants that under *Bivens* no action lies for an abuse of process claim, and that this claim must be dismissed. Plaintiff has not provided, nor is the court aware of, any decisions of the Supreme Court or Sixth Circuit establishing a cause of action under *Bivens* for abuse of process. Plaintiff has failed to cite any relevant authority for the proposition that one exists. The court is mindful that "the Supreme Court has warned that the *Bivens* remedy is an extraordinary thing that should rarely if ever be applied in new contexts," *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009), and that at least one other circuit has recently declined to recognize an abuse of process claim under *Bivens*, *Morales v. City of New York*, 752 F.3d 234, 238 (2d Cir. 2014). The court declines to extend the *Bivens* remedy here.

### d. Count XV - Equal Protection Failure to Investigate Claim

Defendants argue that Plaintiff's Equal Protection claim based on Agent McLellan's failure to investigate certain exculpatory evidence related to the federal fraud allegations levied against her must be dismissed as well because it is not an

16

independent constitutional claim and instead falls under the umbrella of her malicious prosecution claim. Defendants cites a number of Sixth Circuit cases which generally hold that failure to investigate an alleged crime, alone, does not rise to the level of an independent constitutional violation or is properly considered part of a malicious prosecution claim. (Dkt. # 40, Pg. ID 1094 (citing *Burchett v. Self*, No. 94-5058, 1994 WL 276865, at *2 (6th Cir. June 21, 1994); *Gregory v. City of Louisville*, 444 F.3d 725, 747 (6th Cir. 2006); *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010)). Assuming that this count alleges nothing other than a general failure to investigate, not coupled with any other unconstitutional or illegal conduct or purpose, then Defendants are correct and this claim should be dismissed. *Burchett*, 1994 WL 276865, at *2 ("the failure of a law enforcement officer to investigate a crime of violence does not establish a civil rights violation unless another recognized constitutional right is involved").

But, Plaintiff's claim in Count XV is curious, because while it is styled as an "equal protection" claim (which would implicate the constitutional right to be free from governmental discrimination), Plaintiff, in articulating the claim, identifies no basis on which discrimination occurred (*e.g.,* race or gender). In fact, she indicates that "obtaining information about this smuggling ring was the ulterior motive for which Defendant McLellan filed the criminal complaint" (Dkt. # 15, Pg. ID 254), as opposed to a discriminatory motive. Assuming that a failure to investigate can rise to the level of an equal protection violation, Plaintiff in this case has failed to allege that such failure, if it occurred, was based on her race or other suspect classification. Even if the court assumes, from the facts and context of the whole Amended Complaint, that Plaintiff is bringing a race claim, she has failed to allege that *similarly situated* people of a different

17

race were treated more favorably. *See White v. City of Toledo*, 217 F. Supp. 2d 838, 841 (N.D. Ohio 2002). The claim fails to meet minimal pleading standards and must be dismissed.

### e. Counts XI and XIII - Fourth Amendment False Arrest and Malicious Prosecution Claims[7]

Plaintiff alleges that Agent McLellan lied in the affidavit supporting her arrest and the criminal complaint filed against her, failed to include certain exculpatory evidence in the affidavit, and that probable cause did not exist for her arrest or prosecution on the federal fraud charges. Accordingly, due to the alleged lack of probable cause, Plaintiff claims her arrest and prosecution were in violation of the Fourth Amendment.

### i. Agent McLellan's alleged false testimony

Plaintiff alleges that Defendant McLellan "provided false testimony when he swore that Plaintiff told the Warren Police Department that she purchased a property in Detroit, Michigan that she had never seen or inspected; and that she purchased the Detroit, Michigan property through Curtis Hayes." (Dkt. # 15, Pg. ID 228.) In order to succeed on her claim of malicious prosecution against McLellan, Plaintiff would have to show that McLellan knowingly fabricated evidence and that there was a reasonable likelihood that the fabricated evidence affected the outcome of the prosecution. *Gregory*, 444 F.3d at 737. Because a facially valid warrant approved by a magistrate judge (as is present in this case) provides a complete defense to a false arrest claim,

---

[7] In both Count XI and Count XIII, which are claims under the Fourth Amendment alleging false arrest and malicious prosecution, Plaintiff makes various brief references to deprivations of equal protection. A Fourth Amendment claim is not the correct constitutional provision through which to bring an equal protection claim (and Plaintiff has alleged equal protection violations elsewhere), so the court will construe these counts to allege only Fourth Amendment violations.

Plaintiff, to prevail, would have to show that in order to procure the warrant, McLellan

"knowingly and deliberately, or with reckless disregard for the truth, made false

statements or omissions that create[d] a falsehood" and "such statements or omissions

[we]re material, or necessary, to the finding of probable cause." *Sykes*, 625 F.3d at 305.

While not attached to the Complaint, Defendants have attached to the Motion to

Dismiss McLellan's affidavit, which contains his allegedly false testimony, and the police

report that provides that basis for his belief that Plaintiff told an officer at the Warren

Police Department that she purchased certain property without seeing it. (See Dkt. # 21-

6, 21-17.) Both of these documents are referred to and relied up in Plaintiff's Amended

Complaint (Dkt. # 15, Pg. ID 220 ("Once aware that her identity was stolen, Plaintiff filed

a police report at the City of Warren Police Department."); *Id.* at Pg. ID 228 ("Notably, in

his Affidavit, Defendant McLellan suppressed favorable and/or exculpatory evidence;

and provided false testimony.")) and are central to Plaintiff's claims here, thus they are

properly considered on a motion to dismiss. *See Bassett v. NCAA*, 528 F.3d 426, 430

(6th Cir. 2008). The police report states that Plaintiff told Warren police that "she had

purchased a property in Detroit through Hayes however she had never seen or

inspected the property." (Dkt. # 21-17, Pg. ID 514.) Plaintiff alleges that she "never

informed Defendant McLellan or the Warren Police Department of any such

information," but even taking this as true, that does not establish that McLellan knew or

had reason to believe the information in the report was false. Unless Plaintiff can allege

that McLellan believed the information in the police report to be false, and knowingly

provided it to the magistrate judge anyway, Plaintiff's claim based on this allegedly

falsified information must fail. Plaintiff has made no such allegation and so the claim cannot stand on this ground.

### ii. Failure to include exculpatory information

Plaintiff also bases her Fourth Amendment claims on McLellan's alleged failure to include certain exculpatory information in his affidavit, and argues that when such information is considered, there was no probable cause for her arrest and prosecution. With regards to both her false arrest and malicious prosecution claims under the Fourth Amendment, Plaintiff must show that probable cause was lacking when she was arrested and charged. *See Sykes*, 625 F.2d at 308-09; *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005). Because the court concludes that, taking all of Plaintiff's allegations and alleged deficiencies as true, probable cause still existed, these claims will be dismissed.

Though Plaintiff makes numerous conclusory allegations about the lack of probable cause and McLellan's failure to disclose exculpatory evidence, she provides little in the way of specific facts supporting this allegation. Plaintiff asserts that McLellan should have (1) disclosed that some of her creditors relieved her of debt based on her claims of identity theft, (2) should have disclosed information about and obtained copies of the falsified drivers license Plaintiff claims was being used to obtain credit in Plaintiff's name, and (3) should have interviewed Curtis Hayes, who allegedly would have provided some exculpatory evidence.

As to Plaintiff's first point, even assuming *arguendo* that if some banks chose to relieve her of certain debts, this additional fact would have a significant impact on the probable cause determination, Plaintiff ignores that fact that the holder of some of the

20

loan accounts at issue in the fraud case against her,  Aurora Loan Services, denied her identity theft claim. (*See* Dkt. # 21-6, Pg. ID 418.) Plaintiff makes no effort to respond to this argument, which was clearly articulated in Defendants' Motion to Dismiss. (*See* Dkt. # 40, Pg. ID 1110.) Further, that private institutions chose to release Plaintiff from certain obligations in the context of a settlement of her identity theft claims, without more, says little if anything about how likely it was that Plaintiff had committed fraud. None of the charged crimes would have required the government to show that there was some currently pending debt in Plaintiff's name, so even assuming Plaintiff was cleared of all the *debts* arising from the alleged identity theft or fraud, such evidence does not necessarily (or even likely) negate the probable cause of *fraud* in this case.

Regarding Plaintiff's second and third point, that McLellan should have disclosed information about and tracked down copies of the falsified drivers license and that he should have made better efforts to get in touch with Curtis Hayes, this allegedly exculpatory evidence, even when taken as true, cannot support Plaintiff's claims in the face of the other evidence presented in McLellan's affidavit. During McLellan's September 24, 2014 testimony at the preliminary exam regarding the state charges filed against Plaintiff, McLellan explained that he knew of the falsified identification card, but that it related to a Sallie Mae loan that he did not think Plaintiff obtained herself. (Dkt. # 21-8, Pg. ID 440.)[8] The Sallie Mae loan was not part of the fraud allegations levied against Plaintiff in the federal criminal action she now complains of, and evidence that Plaintiff's stolen identity was used with respect to an uncharged transaction would not,

---

[8] Again, while the testimony transcript is attached to the Motion to Dismiss and not the pleadings, it is referenced in the Complaint and central to Plaintiff's claims, and can therefore be considered.

21

at least in this case, negate the probable cause that existed with respect to the transactions that were the subject of the federal charge. Indeed, a copy of Plaintiff's true driver's license was found with the loan documents relevant to the federal charges. (Dkt. # 21-6. Pg. ID 419.) Plaintiff's arguments do not overcome the evidence of probable cause presented to the magistrate judge.

The same conclusion applies to Plaintiff's ambiguous allegation that McLellan did not "timely attempt to interview Curtis Hayes." (Dkt. # 15, Pg. ID 228.) It is unclear what Plaintiff means when she asserts that the interview was untimely. The court can only surmise that Curtis was interviewed only after the criminal complaint was filed and Plaintiff was arrested. Regardless of what Plaintiff means, McLellan was not under a duty to disclose information he did not have from an interview he did not conduct; while an officer cannot properly investigate selectively, turning a blind eye to potentially exculpatory information offered to him, the officer's failure to interview every possible defense witness does not defeat probable cause and give rise to a constitutional violation. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1229 (11th Cir. 2004) ("a police officer is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest"). Plaintiff does not even allege what she believes McLellan could have or should have learned from Hayes. Even assuming McLellan would have learned that Hayes stole and used Plaintiff's identity with respect to *some* transactions, that would not have negated the other evidence supporting probable cause as to the *charged* transaction(s).

Probable cause existed when McLellan submitted his affidavit with the criminal complaint. Plaintiff has not attempted to negate or attack the bulk of the evidence

22

supplying probable cause here. Plaintiff has not alleged that she did not make the multiple false statements on two loan applications and Affidavits of Occupancy detailed in McLellan's affidavit. (*See* Dkt. # 21-6, Pg. ID 416.) For example, Plaintiff apparently did claim to be Vice President of Operations for A&H Contractors, when she was in fact employed with CBP, and she did claim that she would occupy multiple residences as her primary residence. (*Id.*) She also listed two different monthly incomes (one $8,000 per month and another $15,000 per month) on the applications. These glaring discrepancies alone, which do not capture the full extent of the evidence advanced in McLellan's affidavit, are easily enough to find that there was probable cause for the fraud charges levied against her. Therefore, Plaintiff's false arrest and malicious prosecution claims will be dismissed.

### e. Counts XVIII and XXII - Fifth Amendment Negligent and Intentional Infliction of Emotional Distress Claims

Plaintiff appears to assert state tort violations as the bases for her *Bivens* claims at various points in the Amended Complaint. (*See* Counts XVIII and XXII). Section 1983 and related actions under *Bivens* compensate persons for injuries cause by the deprivation of a constitutional right or federal law. *See Carey v. Piphus*, 435 U.S. 247 (1987). Only when violation of state law results in infringement of a federally protected right can a *Bivens or* § 1983 cause of action be maintained. *See Paul v. Davis*, 424 U.S. 693 (1976); *Stern v. New Haven Cmty Schs.*, 529 F. Supp. 31, 34 (E.D. Mich. 1981) (citing *Robinson v. McCorkle*, 462 F.2d 111, 114 (3d Cir. 1972) (claims of physical and emotional distress are not actionable under § 1983)). Thus, Plaintiff's allegations that Defendants' actions amounted to negligent or intentional inflictions of emotional distress sound only in state law. Standing alone, they fail to state a claim under *Bivens*.

23

**C. State Tort Claims**

**1. State Tort Claims Against the United States**

Plaintiff brings claims for negligent infliction of emotion distress (Count XIX) and intentional infliction of emotional distress (Count XXIII) against the United States and Jeh Johnson. The Federal Torts Claims Act ("FTCA") provides the "exclusive remedy for a suit for damages for injuries . . . resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1). To bring a claim under the FTCA, the claimant "must first present the claim to the appropriate agency and have the claim finally denied by the agency." *Holt v. Morgan*, 79 F. App'x 139, 141 (6th Cir. 2003) (citing 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113 (1993)). "In order to fulfill this requirement, the claimant must: (1) give written notice of the claim sufficient to enable the agency to investigate the claim; and (2) place a value (or "sum certain") on the claim." *Id.* (citing *Glarner v. U.S., Dep't of Veterans Admin.*, 30 F.3d 697, 700 (6th Cir. 1994); 28 C.F.R. § 14.2(a)).

Defendants argue that Plaintiff failed to present a claim to the appropriate agency, and that any complaints presented did not constitute a claim for FTCA purposes because they failed to seek a sum certain for damages. Plaintiff responds that, as established in her affidavit attached to her Amended Complaint, she "filed a claim with the Office of Special Counsel against Agent McClellan" believing that the Office of Special Counsel "was the appropriate agency to [sic] file my claim." (Dkt. # 15-1, Pg. ID 285.) Even assuming the Office of Special Counsel was the appropriate agency, or that it should have been forwarded to the appropriate agency, Plaintiff has

24

failed to allege or argue that she ever asserted a claim for *damages* much less a sum certain. Not every complaint in any form to an agency constitutes a claim for purposes of FTCA exhaustion. *See Glarner v. U.S. Dept. of Veterans Admin.*, 30 F.3d 697, 700 (6th Cir. 1994) ("Because the sum certain requirement was not met [the filing] did not establish district court jurisdiction over [plaintiff]'s claims."). As the FTCA requires a claim for a sum certain of damages to be made in order to exhaust administrative remedies, Plaintiff has failed to meet this requirement and her tort claims against the United States must be dismissed.

### 2. State Tort Claims Against Agent McLellan

Plaintiff asserts a number of tort claims against Agent McLellan, as well: tortious interference with an advantageous business relationship (Count XVI), negligent infliction of emotional distress (Count XX), and intentional infliction of emotional distress (Count XXIV). These claims similarly fail under the FTCA's exhaustion requirement unless Plaintiff can show that Agent McLellan was acting outside the scope of his employment, placing the claim outside of the ambit of the FTCA. The court concludes that Plaintiff can make no such showing and that these claims should be dismissed.

Whether an employee acted within the scope of employment is "a question of law, not fact, made in accordance with the law of the state where the conduct occurred." *Randall v. NASA*, 14 F.3d 1143, 1147 (6th Cir. 1994). Under Michigan law, whether an employee acts within the scope of employment turns on whether "the employee's actions are within his authority." *Rector v. United States*, 243 F. App'x 976, 979 (6th Cir. 2007) (citing *Arbour v. Jenkins*, 903 F.2d 416, 421 (6th Cir. 1990)). This is true even if the actions constitute intentional torts. *Id.*

25

All of the conduct Plaintiff complains of was related to Agent McLellan's investigation of suspected smuggling activity, Plaintiff's claims of identity theft, and Plaintiff's suspected fraudulent activity related to her identity theft claims. Plaintiff's argument that such investigatory activities were outside the scope of an OIG Special Agent is frivolous. Agent McLellan's duties as an OIG Special Agent generally include investigating allegations of misconduct by DHS employees, and Plaintiff was a DHS employee. Plaintiff makes conclusory and unfounded allegations that Agent McLellan continued his involvement in the state investigation and prosecution of Plaintiff after the federal government had closed the case or abandoned any interest in it. However, coordination between federal and local authorities and harmonization of federal and local prosecution efforts neither constitutes wrongdoing nor is outside the scope of a federal agent's authority.

The closest Plaintiff gets to citing authority that supports her argument is *Delbridge v. United States*, No. 12-cv-11510, 2013 WL 4417532 (E.D. Mich. Aug. 15, 2013), but that case is easily distinguishable. *Delbridge* involved a detention and deportation officer with Immigration and Customs Enforcement ("ICE") who, while off duty, brutally assaulted two individuals he believed to have information about the burglary of his mother's home. The district court held that the investigation and attack were outside of the officer's authority because they happened while he was off duty and had nothing to do with ICE's mission of enforcing laws governing border control, customs, trade, or immigration. *Id.* at *4. Here, Agent McLellan was on duty and acting to investigate the wrongdoing of an employee of the agency he was charged to monitor.

Because the court holds that Agent McLellan was acting within the scope of his

26

employment at all times, the FTCA governs Plaintiff's state tort claims against Agent McLellan. As explained above, Plaintiff failed to make an administrative claim seeking a sum certain of damages as to these claims and thus failed to exhaust her administrative remedies. Plaintiff's state tort claims against Agent McLellan fail.

## IV. CONCLUSION

Accordingly, IT IS ORDERED that Defendants' Motion to Dismiss (Dkt. # 40) is GRANTED.

                        S/Robert H. Cleland
                       ROBERT H. CLELAND
                       UNITED STATES DISTRICT JUDGE

Dated:  August 19, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 19, 2016, by electronic and/or ordinary mail.

                        S/Lisa Wagner
                       Case Manager and Deputy Clerk
                       (313) 234-5522