**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

KYISHA JONES,

     Plaintiff,

v.                                                                  Case No. 14-12107

CHAD WOLF,

     Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT**

     Before the court is the single remaining count of the twenty-four original counts

stated in Plaintiff Kyisha Jones's complaint, the Sixth Circuit having vacated this court's

award of summary judgment on that count and remanded the case for further discovery

and any other proceedings as may be needed.

     Plaintiff brings this action against Defendant Chad Wolf in his official capacity as

Secretary of the United States Department of Homeland Security for sex discrimination

under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). (ECF No. 15,

PageID.241-42.) Plaintiff was employed as a Customs and Border Patrol ("CBP")

enforcement officer. In 2011, she applied, but was not chosen, for a promotion to

supervisory CBP officer. Plaintiff alleges the CBP passed her by because of her sex.

     Defendant moves again for summary judgment. (ECF No. 104.) Plaintiff has filed

a response and Defendant has replied. (ECF Nos. 111, 120.) The court is thoroughly

familiar with the record and does not find a hearing to be necessary. E.D. Mich. L.R.

7.1(f)(2). For the reasons provided below, Defendant's motion will be granted.

## I.  BACKGROUND

The following facts are taken from the record established by both parties, and each material fact is either agreed upon or lacks contradictory evidence. The court will not recite the full factual record of the case, which the court previously reviewed, twice, for two previous dispositive motions. (*See* ECF Nos. 67, 86.)

Plaintiff was hired by the Immigration and Naturalization Service ("INS") in June 2002. (ECF No. 104, PageID.2811; ECF No. 110-1, PageID.3211.) After the Department of Homeland Security was created, Plaintiff became a CBP officer in 2003. (ECF No. 104, PageID.2811; ECF No. 110-1, PageID.3211.) In April 2007, Plaintiff applied for and received placement as a CBP Enforcement Officer. (ECF No. 104, PageID.2811; ECF No. 110-1, PageID.3211.)

Plaintiff preferred to perform immigration enforcement work over the secondary and non-enforcement tasks that were part of her job duties. (ECF No. 104, PageID.2812; ECF No. 110-1, PageID.3212; ECF No. 104-4, PageID.2917.) Managing employees at CBP received several reports that Plaintiff disliked performing duties outside core immigration enforcement and complained about secondary assignments. (ECF No. 104, PageID.2812; ECF No. 110-1, PageID.3212; ECF No. 104-4, PageID.2917; ECF No. 104-6, PageID.2947; ECF No. 104-2, PageID.2874.)

A manager received a report from the summer of 2007 that Plaintiff refused to assist a different station at which an enforcement officer was preparing for maternity leave. (ECF No. 104, PageID.2812-13; ECF No. 110-1, PageID.3213; ECF No. 104-4, PageID.2919-20.) Plaintiff was asked to help the other enforcement officer; Plaintiff

reportedly refused. (ECF No. 104, PageID.2812-13; ECF No. 110-1, PageID.3213; ECF No. 104-4, PageID.2919-20.)

Also in the summer of 2007, Plaintiff's supervisor ordered her to work overtime after her shift was complete. (ECF No. 104, PageID.2814; ECF No. 110-1, PageID.3214.) Plaintiff's station had increased workload—vehicle traffic owing to a baseball game—and other officers had already been ordered to work overtime. (ECF No. 104, PageID.2814; ECF No. 110-1, PageID.3214.) CBP policy stated that if no officers volunteered to work overtime, the officer with the lowest overtime hours would be ordered to work; Plaintiff had the lowest overtime hours that day. (ECF No. 104, PageID.2813-4; ECF No. 110-1, PageID.3214.) Despite orders from two supervisors, Plaintiff refused to work overtime and walked off the job. (ECF No. 104, PageID.2814; ECF No. 110-1, PageID.3214.) Plaintiff was suspended for five days as a result. (ECF No. 104, PageID.2813; ECF No. 110-1, PageID.3214.)

In 2011, the CBP began reviewing applications for supervisory CBP officer positions. (ECF No. 104, PageID.2818; ECF No. 110-1, PageID.3217.) The CBP engaged in two sets of promotions, one in June 2011 and another in August 2011. (ECF No. 104, PageID.2819-20; ECF No. 110-1, PageID.3217-18.) Five candidates were promoted in June 2011. (ECF No. 104, PageID.2819; ECF No. 110-1, PageID.3218.) Two were promoted in August 2011. (ECF No. 104, PageID.2819-20; ECF No. 110-1, PageID.3217-18.)

Plaintiff applied for a supervisory position in 2011. (ECF No. 104, PageID.2819; ECF No. 110-1, PageID.3217.) She had worked at CBP for approximately nine years; she was the senior post advisor for a local CBP community outreach program; she

received "team lead" assignments during her time as a CBP enforcement officer; and she passed each performance review she had. (ECF No. 104, PageID.2819; ECF No. 110-1, PageID.3217.) Plaintiff had also received seven cash awards for positive job performance. (ECF No. 116-8, PageID.3950.) Nonetheless, Plaintiff was not selected for promotion. (ECF No. 104, PageID.2819-20; ECF No. 110-1, PageID.3217-18.) Four male officers and one female officer were chosen in June 2011, and one male officer and one female officer were chosen in August 2011. (ECF No. 104, PageID.2819-20; ECF No. 110-1, PageID.3217-18.)

In September 2011, Plaintiff filed an Equal Employment Opportunity ("EEO") complaint alleging sex discrimination in the CBP's 2011 promotion process. (ECF No. 104, PageID.2825; ECF No. 110-1, PageID.3221.) The Equal Employment Opportunity Commission ("EEOC") issued a final decision in March 2012, concluding the CBP did not discriminate against Plaintiff based on her sex. (ECF No. 104, PageID.2826; ECF No. 110-1, PageID.3221.)

Plaintiff filed this lawsuit in May 2014 challenging CBP's promotion decisions. (ECF No. 1.) In lieu of filing an answer, Defendant moved to dismiss the complaint. (ECF No. 12.) After Plaintiff amended her complaint and Defendant refiled the motion to dismiss, (ECF Nos. 15, 20, 40), the court granted Defendant's motion, dismissing the case in August 2016. (ECF No. 49.) Plaintiff appealed, and in August 2017, the Sixth Circuit affirmed dismissal of twenty-three of the twenty-four counts of Plaintiff's complaint. (ECF No. 53, PageID.1552.) The Sixth Circuit vacated this court's judgment only as to Plaintiff's Title VII sex discrimination claim. That count was remanded for additional discovery and follow-on proceedings. (*Id.*)

4

Upon remand in October 2017, the court held a telephonic conference where Defendant indicated it wished to file a motion for summary judgment; the court set briefing deadlines. (ECF No. 56.) Defendant filed its motion, but Plaintiff sought permission to conduct additional discovery. (ECF Nos. 57, 58.) In February 2018, the court denied Defendant's motion without prejudice and permitted Plaintiff to engage in additional discovery. (ECF No. 67, PageID.1931-32.) After Plaintiff was given the opportunity to engage in discovery, Defendant refiled its motion for summary judgment on the court's direction. (ECF No. 74.) The court granted that motion in October 2018, (ECF No. 86), and Plaintiff appealed the decision to the Sixth Circuit. In January 2020, the Sixth Circuit vacated the court's grant of summary judgment, reasoning that the court did not provide Plaintiff with an adequate opportunity to engage in discovery. (ECF No. 91.)

After remand in March 2020, (ECF No. 92), and in accordance with the Sixth Circuit's ruling, the court directed the parties to complete discovery. (ECF No. 93.) Per the court's direction, the parties participated in discovery for five months, and on August 26, 2020, the court provided Defendant time to refile its motion for summary judgment. (ECF No. 102.) Defendant did so on September 23, 2020. (ECF No. 104.)

## II.  STANDARD

To prevail on a motion for summary judgment, a movant must show—point out—that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). First, the moving party bears the initial burden of presentation that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no

requirement, however, that the moving party "support its motion with [evidence] negating the opponent's claim." *Id.* (emphasis removed); *see also Emp'rs Ins. of Wausau v. Petrol. Specialties, Inc.*, 69 F.3d 98, 102 (6th Cir. 1995).

Second, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis removed) (quoting Fed. R. Civ. P. 56(e)). This requires more than a "mere existence of a scintilla of evidence" or "'[t]he mere possibility of a factual dispute." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). For a court to deny summary judgment, "the evidence [must be] such that a reasonable [finder of fact] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. All reasonable inferences from the underlying facts must be drawn "in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015).

### III. DISCUSSION

Plaintiff argues that because Defendant did not file an answer prior to moving for summary judgment, Defendant has admitted all material allegations in the complaint. The court will first address that contention. Next, it will turn to the substance of Defendant's motion and whether summary judgment is warranted for Plaintiff's claim under a single-motive sex discrimination theory and will then address Plaintiff's claim under a mixed motive sex discrimination theory. Finally, the court will consider Defendant's assertion that Plaintiff failed to fully exhaust administrative remedies.

**A.  Defendant's Answer**

Plaintiff preliminarily contends that because Defendant never filed an answer it has admitted liability under Title VII. According to Plaintiff, there is no need to consider Defendant's motion for summary judgment or conduct a trial on the merits. (ECF No. 111, PageID.3285-86.) "[O]nly the matter of damages" requires a trial. (*Id.*) Plaintiff cites Federal Rule of Civil Procedure 8(b)(6), which states "[a]n allegation [in a complaint] . . . is admitted if a responsive pleading is required and the allegation is not denied."

This case did not proceed in a traditional fashion, through no fault of Defendant. When this lawsuit was initiated, Defendant complied with the Federal Rules of Civil Procedure by filing a motion to dismiss in lieu of answering the complaint. *See* Fed. R. Civ. P. 12(a). (ECF No. 12, Defendant's Motion to Dismiss.) The court stayed the case due to Plaintiff's state court criminal proceedings, (ECF No. 36), but eventually ruled on Defendant's motion to dismiss and granted it. (ECF No. 49.) Rule 12(a)(4) requires that a responsive pleading be filed within fourteen days of "the court['s] den[ial]" of a motion to dismiss, and generally a failure to answer a complaint within an allotted time constitutes an admission of the complaint's allegations. *See* Fed. R. Civ. P. 8(b)(6). However, the court did not *deny* Defendant's motion to dismiss, and Defendant's obligations under Rule 12(a)(4) were never triggered.

After Sixth Circuit vacated the court's decision as to Plaintiff's sex discrimination claim in 2017, Defendant indicated its intention to file a summary judgment motion, and the court immediately directed the parties to submit briefs. (ECF No. 56.) The court "consulted with the parties regarding an appropriate . . . schedule" and stated it would

"proceed on Defendants' impending renewed Motion for Summary Judgment." (*Id.*, PageID.1572.)

In setting this schedule, pursuant to an open discussion with the parties, the court relied on its "wide discretion to manage [its] own docket." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999); *accord Lopez v. Foerster*, 791 F. App'x 582, 586 (6th Cir. 2019). The court ordered Defendant to focus its energies on briefing a summary judgment motion. Later, after Plaintiff requested time to engage in discovery in response to Defendant's motion, the court directed Defendant to comply with Plaintiff's discovery requests. (ECF No. 67.) In taking these actions, the court implicitly suspended Defendant's obligation to file an answer, which, for the purposes of considering a summary judgment motion, was unnecessary.

The Sixth Circuit has on several occasions reviewed the merits of motions for summary judgment filed "in lieu of an answer." *See, e.g., Smith v. Cnty. Of Lenawee*, 600 F.3d 686, 688 (6th Cir. 2010); *Oswald v. BAE Indus.*, 483 F. App'x 30, 32 (6th Cir. 2012); *Rogel v. Dubrinsky*, 337 F. App'x 465, 468 (6th Cir. 2009). In none of those decisions did the Sixth Circuit indicate that the movant had somehow admitted to the allegations of the complaint, and that the opposing party had therefore succeeded in proving liability merely because no answer had been filed. The court would expect such a remarkable conclusion to be at least mentioned by the Sixth Circuit.

To the extent that Defendant faced a deadline to answer, the court modified it for "good cause." Fed. R. Civ. P. 6(b)(1) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time."). Although Rule 8(b)(6) states "[a]n allegation . . . is admitted if . . . the allegation is not denied" and "*if a*

8

*responsive pleading is required*," the rule also states "[i]f a responsive pleading is not required, an allegation is considered denied or avoided." The court has not required Defendant to file an answer and the allegations in Plaintiff's complaint are not deemed admitted. *Id.*

Plaintiff has been in no way prejudiced by the lack of an answer. Any rational observer would interpret Defendant's consistent opposition and repeated motions for summary judgment as a denial of liability. Notably, Plaintiff did not raise this argument for Defendant's earlier dispositive motion practice, despite the case having been first remanded from the Sixth Circuit in October 2017.

Plaintiff's argument here strikes the court as a disingenuous eleventh-hour maneuver to deprive Defendant of the ability to mount an effective defense. This case has a long history. The lack of an answer is not determinative on the issue of liability.

### B. Plaintiff's Claim of Single-Motive Sex Discrimination

The court analyzed the merits of Plaintiff's sex discrimination claim in October 2018, and the court granted summary judgment in favor of Defendant. (ECF No. 86.) The Sixth Circuit vacated the decision on grounds that the court did not provide Plaintiff adequate discovery, but the Sixth Circuit did not reach this court's analysis on the merits. (ECF No. 91.) Additional discovery has now been conducted, and, as the court found in October 2018, the evidence Plaintiff presents does not create a genuine dispute of material fact. Fed. R. Civ. P. 56(a).

Title VII of the of the Civil Rights Act of 1964 makes it illegal for "an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges

of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Under

Title VII, "a failure to promote" due to an employee's sex "is an adverse employment

action" that can create civil liability. *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th

Cir. 2000).

A plaintiff can prove sex discrimination through either direct evidence or

circumstantial evidence. Plaintiff does not present direct evidence such as "[a] facially

discriminatory employment policy or a . . . decision maker's express statement" of

animus. *EEOC v. R.G & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 571 (6th Cir.

2018), *aff'd on other grounds sub nom.*, *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731

(2020). Thus, Plaintiff's claim relies on circumstantial evidence.

"Circumstantial evidence . . . is proof that does not on its face establish

discriminatory animus, but does allow a factfinder to draw a reasonable inference that

discrimination occurred." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 n.5 (6th

Cir. 2008) (quoting *Wexler v. White's Fine Furniture*, *Inc.*, 317 F.3d 564, 570 (6th Cir.

2003)). Proving sex discrimination through circumstantial evidence requires *McDonnell-

Douglas* burden-shifting analysis. *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232,

238 (6th Cir. 2005) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802

(1973)). The plaintiff in a failure-to-promote claim must first show that "(1) she is a

member of the protected class; (2) she applied for and was qualified for a promotion; (3)

she was considered for and was denied the promotion; and (4) other employees of

similar qualifications who were not members of the protected class received promotions

at the time the plaintiff's request for promotion was denied.'" *Provenzano v. LCI*

*Holdings, Inc.*, 663 F.3d 806, 812–13 (6th Cir. 2011). "Once the plaintiff establishes a

*prima facie* claim, the burden shifts to the defendant to proffer a legitimate, non-discriminatory reason for the employment decision at issue." *Columbus Metro. Hous. Auth.*, 429 F.3d at 238.

The plaintiff can still survive an employer's motion for summary judgment if she can "'identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination.'" *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 303 (6th Cir. 2016). To establish pretext, a plaintiff may show "the proffered [non-discriminatory] reason (1) has no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to warrant the adverse action." *Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 558 (6th Cir. 2009).

## 1.  Plaintiff's *Prima Facie* Case

Defendant does not contest the first three prongs of Plaintiff's *prima facie* case. Plaintiff is a woman and thus "a member of the protected class." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d at 812–13. A reasonable juror could conclude that she was at least minimally qualified for the supervisory role, that she applied for the job, and that Defendant declined to promote her. *Id.*; *Anderson*, 477 U.S. at 248. (ECF No. 104, PageID.2819-20; ECF No. 110-1, PageID.3217-18.)

Defendant promoted four males and one female to supervisory positions in June 2011; one male and one female were promoted in August 2011. (ECF No. 104, PageID.2819-20; ECF No. 110-1, PageID.3217-18.) According to Defendant, Plaintiff fails to state a *prima facie* claim as to the four males promoted in June 2011 because Plaintiff did not have "similar qualifications." *Provenzano*, 663 F.3d at 812–13. (ECF No. 104, PageID.2834-35.) To meet the fourth prong of a *prima facie* sex discrimination

11

claim, "the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in all of the relevant aspects." *Knox v. Neaton Auto Prods. Mfg.*, 375 F.3d 451, 458 (6th Cir. 2004). However, this burden is "not onerous," *Birch v. Cuyahoga Cnty. Prob. Ct.*, 392 F.3d 151, 167 (6th Cir. 2004), and "the plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment." *Knox*, 375 F.3d at 458.

Plaintiff and the four males had characteristics a reasonable juror could find similar. *See Anderson*, 477 U.S. at 248. The four men had seven to nine years of work experience at the CBP; Plaintiff had nine. (ECF No. 104, PageID.2819, 2821-23; ECF No. 110-1, PageID.3217-19.) Plaintiff had received a passing score for each of her performance reviews, as did the four males. (ECF No. 104, PageID.2819, 2821-23; ECF No. 110-1, PageID.3217-19.) Defendant argues there are other, more significant, characteristics that set the males apart from Plaintiff.[1] (ECF No. 104, PageID.2834-35.) Nonetheless, the court will assume for purposes of this motion that Plaintiff has stated a *prima facie* case.

## 2. Defendant's Non-Discriminatory Justification

Defendant offers legitimate non-discriminatory reasons for not promoting Plaintiff. *Columbus Metro. Hous. Auth.*, 429 F.3d at 238. In the summer of 2007, Plaintiff's post was busy due to traffic from a baseball game. (ECF No. 104, PageID.2814; ECF No. 110-1, PageID.3214.) Pursuant to agency policy, Plaintiff had the least amount of overtime and was ordered to work extra time to help Defendant pick up the increased demand. (ECF No. 104, PageID.2813-14; ECF No. 110-1, PageID.3214.) It is

---

[1]      Those differences are discussed further below.

uncontested that Plaintiff refused the direct orders of two supervisors and walked off the job. (ECF No. 104, PageID.2814; ECF No. 110-1, PageID.3214.) For this insubordination she received a five-day suspension.

Defendant's port director for the Port of Detroit testified that Plaintiff's decision demonstrated Plaintiff did not have "superior leadership qualities" as compared to other candidates. (ECF No. 104-2, PageID.2872.) An assistant port director testified that walking off the job was "a huge problem." (ECF No. 104-4, PageID.2925.) It demonstrated that Plaintiff was not "committed to the mission" and was instead self-interested. (*Id.*) According to the assistant port director, as a result of Plaintiff's decision "[her] coworkers [had] to pick up [her] slack or . . . there is something that could go undone," undercutting the CBP's mission. (*Id.*)

In addition, the parties agree that CBP management received a report that Plaintiff refused to assist a coworker preparing to take maternity leave in the summer of 2007 after Plaintiff was asked by her supervisor to do so. (ECF No. 104, PageID.2812-13; ECF No. 110-1, PageID.3213; ECF No. 104-4, PageID.2919-20.) Plaintiff was not formally disciplined in this incident.

It is also uncontested that none of the four males promoted in June 2011 had a disciplinary record, let alone discipline for direct disobedience of a supervisor's orders. (ECF No. 104, PageID.2821-23; ECF No. 110-1, PageID.3218-19.) The one male promoted in August 2011, Danny, had been suspended for three days in 2009 for failing to report outside employment. (ECF No. 104, PageID.2824; ECF No. 110-1, PageID.3219.) However, uncontroverted evidence shows that Danny disclosed to the CBP that he ran an outside company in his initial employment investigation. (ECF No.

13

117-4, PageID.4070.) He had submitted the required forms in 2005, but the outside company had changed names due to a merger; the job responsibilities, however, did not change. (ECF No. 104-13, PageID.3153; ECF No. 117-6, PageID.4105.) The CBP cited Danny for not submitting another form for the merged company. (ECF No. 104-11, PageID.3143.)

Defendant's port director believed Danny "had submitted that he had this employment prior . . . so the agency was aware [of it]." (ECF No. 104-2, PageID.2892.) The port director viewed Danny's actions as "more of a technical violation, paperwork." (*Id.*, PageID.2886.) The violation would have been more serious if "that was something he was trying to hide . . . and he had knowledge that [the CBP] would not have . . . approve[d]." (*Id.*, PageID.2895.) When notified of a possible violation, Danny followed CBP commands and ceased his outside employment for purposes of the investigation. (ECF No. 117-4, PageID.4072.) According to the port director, it also would have been more serious if "a supervisor ordered [Danny] to [submit the paperwork] and he refused," (*id.*, PageID.2895), similar to the way in which Plaintiff stubbornly refused a clear order to work overtime in 2007. (ECF No. 104, PageID.2814; ECF No. 110-1, PageID.3214.) Danny did file paperwork again for his outside work, including for the merged company, and was not further disciplined. (ECF No. 104, PageID.2825; ECF No. 110-1, PageID.3220; ECF No. 117-4, PageID.4072; ECF No. 117-2, PageID.4063.)

The parties agree that managing CBP employees received several reports of Plaintiff complaining about secondary and non-immigration responsibilities that were part of her job description. (ECF No. 104, PageID.2812; ECF No. 110-1, PageID.3212; ECF No. 104-4, PageID.2917; ECF No. 104-6, PageID.2947; ECF No. 104-2,

PageID.2874.) Defendant's port director for the Port of Detroit testified that "it was apparent" Plaintiff disliked secondary work assignments; the port director stated conflicts with supervisors occurred "often." (ECF No. 104-2, PageID.2872-73.) According to the port director, this demonstrated a lack of leadership potential. "[G]oing from [a] CBP [officer] to a supervisory [position], [the employee] [is] going to be working in all . . . areas," and "if it's clear that [the supervisor] [does not] necessarily like working . . . other areas . . . it's going to affect the respect" of other CBP employees working under the supervisor. (*Id.*) An assistant port director testified that Plaintiff's attitude toward responsibilities she disliked "was not professional." (ECF No. 104-4, PageID.2918.)

It is uncontested that CBP managers did not have similar reports of vocalized complaints and negative attitudes among the males promoted instead of Plaintiff. (ECF No. 104-4, PageID.2917, 2924; ECF No. 104-6, PageID.2947; ECF No. 104, PageID.2873.) However, another employee, who was male, was known to have attitudes and behaviors similar to Plaintiff's. (ECF No. 104-4, PageID.2924; ECF No. 104-6, PageID.2947; ECF No. 104-2, PageID.2873.) He was not promoted, although Plaintiff contends he lacked leadership experience. (ECF No. 104, PageID.2812; ECF No. 110-1, PageID.3212.)

Finally, it is uncontested that Danny, the sole male competitor who had a disciplinary record, possessed significant leadership experience. (ECF No. 104, PageID.2824; ECF No. 110-1, PageID.3219.) He worked for the Detroit Police Department for eighteen years. (ECF No. 74-3, PageID.2151-52.) Danny was a sergeant for seven years and was tasked with supervising up to sixty other employees.

(*Id.*) Plaintiff worked as a "team lead" while she was a CBP enforcement officer. (ECF No. 104, PageID.2819; ECF No. 110-1, PageID.3217.) However, it is uncontested that team lead was a daily work assignment given to many CBP officers; it was not a supervisory position or title. (ECF No. 104, PageID.2811; ECF No. 110-1, PageID.3211; ECF No. 104-2, PageID.2869.) Danny also served as a team lead, (ECF No. 74-3, PageID.2147, 2149), as did another male and one female that were promoted. (ECF No. 104, PageID.2821-22; ECF No. 110-1, PageID.3218.)

There is no genuine issue of material fact as to Defendant's legitimate, non-discriminatory justification for declining to promote Plaintiff and the court finds that no reasonable juror could find for Plaintiff on this issue. Fed. R. Civ. P. 56(a).

### 3. Plaintiff's Assertions of Pretext

Plaintiff contends that Defendant's non-discriminatory justifications are merely a pretext for sex discrimination, and that the issue must be presented to a jury. (ECF No. 111, PageID.3297-3311.) The court disagrees. As the court thoroughly analyzed in its October 2018 opinion granting summary judgment, no genuine dispute of fact exists that Defendant's non-discriminatory justifications are pretextual. Fed. R. Civ. P. 56(a). (ECF No. 86.)

The court does not have a role in "acting as a super personnel department, overseeing and second-guessing employers' business decisions." *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 627 (6th Cir. 2006). This is especially true for management positions, which, as supervisors and policy crafters, have a substantial impact on an organization's operations, efficiency, and culture. *See Browning v. Dept. of Army*, 436 F.3d 692, 698 (6th Cir. 2006) ("[T]his court afford[s] great flexibility to employers when

16

selecting management personnel."); *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987)

("An employer has even greater flexibility in choosing a management-level employee,

as is the case here, because of the nature of such a position."). Thus, "evidence that a

rejected applicant was as qualified or marginally more qualified than the successful

candidate is insufficient, in and of itself, to raise a genuine issue of fact that the

employer's proffered legitimate, non-discriminatory rationale was pretextual." *Bender*,

455 F.3d at 627; *accord Hawkins v. Memphis Light Gas and Water*, 520 F. App'x 316,

319-20 (6th Cir. 2013).

To establish a triable issue of fact on pretext through the use of comparative

qualifications, Plaintiff must show "either (1) [she] was a plainly superior candidate, such

that no reasonable employer would have chosen the [other] applicant[s] over [her], or

(2) [she] was as qualified as if not better qualified than the successful applicant[s], and

the record contains other probative evidence of discrimination." *Rachells v. Cingular*

*Wireless Emp. Servs., LLC*, 732 F.3d 652, 668 (6th Cir. 2013); *accord Provenzano v.*

*LCI Holdings, Inc.*, 663 F.3d 806, 815 (6th Cir. 2011). This standard closely traces

traditional methods of proving pretext, such as proof that the non-discriminatory reason

"did not actually motivate the adverse employment action [or] . . .  was insufficient to

warrant the adverse action." *Sybrandt*, 560 F.3d at 558.

Plaintiff does not present evidence that she was in fact a "plainly superior

candidate" to the five males promoted. *Rachells*, 732 F.3d at 668. While she had nine

years of work experience at the CBP, the five males had between seven and nine years

of work experience. (ECF No. 104, PageID.2819, 2821-24; ECF No. 110-1,

PageID.3217-19.) Plaintiff received a passing score on each of her performance

17

reviews, but it is uncontested that the five males did as well. (ECF No. 104, PageID.2819, 2821-24; ECF No. 110-1, PageID.3217-19.)

The parties agree that Plaintiff served as a team lead; they also agree that it is a non-supervisory role that is rotated among CBP officers as a daily assignment. (ECF No. 104, PageID.2811; ECF No. 110-1, PageID.3211; ECF No. 104-2, PageID.2869.) Defendant's port director for the Port of Detroit, who made promotion recommendations within the CBP, offered uncontradicted testimony that "the qualifications for someone to become a team leader" were not what the CBP was "looking for to promote someone to a supervisory . . . position." (ECF No. 104-2, PageID.2880.) The supervisory position had substantially greater leadership responsibilities and required management of more challenging employees. (*Id.*)

Plaintiff organized and ran an outreach program to local high school students. (ECF No. 104, PageID.2819; ECF No. 110-1, PageID.3217.) She submitted an affidavit stating the program included seven officers advising ten to fifteen students per year. (ECF No. 116-2, PageID.3781.) However, this experience did not set Plaintiff apart from other candidates. It is uncontested that other applicants had significant prior leadership roles as well as experiences going beyond standard job duties of a CBP officer. Two of the five males promoted previously served as a supervisor on a temporary basis, as did one of the females promoted. (ECF No. 104, PageID.2821-23; ECF No. 110-1, PageID.3218-19.)  Two of the remaining three males, including Danny, worked as team leads and received anti-terrorism assignments, which required specialized and enhanced training. (ECF No. 104, PageID.2821, 2824; ECF No. 110-1, PageID.3218-19; ECF No. 74-3, PageID.2147, 2149; ECF No. 104-2, PageID.2853.) In addition, for

seven years Danny held a supervisory role in the Detroit Police Department, where he was a sergeant overseeing up to sixty employees. (ECF No. 104, PageID.2819; ECF No. 110-1, PageID.3217.)

Plaintiff also received seven cash awards for positive job performance. (ECF No. 116-9, PageID.3952-53.) However, it is uncontested that the CBP did not give preference or extra weight to a candidate based on cash awards. The CBP's promotion plan states: "Mere possession of a specific number of awards or a specific appraisal level will not, in and of themselves, be factors in the evaluation process and will not be used to mechanically increase ratings." (ECF No. 57-2, PageID.1616.) Furthermore, the four males promoted in June 2011 had eight, nine, four, and seven cash awards respectively; Danny had five. (ECF No. 116-9, PageID.3952-53.)

Most significantly, none of the four males promoted in the June 2011 promotions had any record of discipline; none had a history of refusing direct orders. (ECF No. 104, PageID.2821-23; ECF No. 110-1, PageID.3218-19.) As noted above, Danny was disciplined in 2009, and the parties agree he did not submit official documentation of outside work as required by CBP rules. (ECF No. 104, PageID.2824; ECF No. 110-1, PageID.3219.) However, it is also uncontested that Danny stated he ran outside businesses when he first joined the CBP, and he submitted the proper paperwork in 2005. (ECF No. 117-4, PageID.4070; ECF No. 104-13, PageID.3153; ECF No. 117-6, PageID.4105.) Defendant's port director provided uncontradicted testimony that Danny's actions were "more of a technical violation, [based in] paperwork." (ECF No. 104-2, PageID.2886.) The violation would have been more serious if Danny had attempted to hide the outside employment or disobeyed a direct order, (*id.*,

19

PageID.2895), which Plaintiff undeniably did. (ECF No. 104, PageID.2814; ECF No. 110-1, PageID.3214.) CBP managers testified that Plaintiff's decision to walk off the job demonstrated Plaintiff did not have "superior leadership qualities" to other candidates, (ECF No. 104-2, PageID.2872), and was "a huge problem" for the CBP. (ECF No. 104-4, PageID.2925.)

It is uncontested that CBP management had an additional report that Plaintiff refused a supervisor's request that Plaintiff assist a coworker preparing to take leave. (ECF No. 104, PageID.2812-13; ECF No. 110-1, PageID.3213; ECF No. 104-4, PageID.2919-20.) Plaintiff was also known to complain and disapprove of secondary job responsibilities which supervisors were expected to manage and perform. (ECF No. 104, PageID.2812; ECF No. 110-1, PageID.3212; ECF No. 104-4, PageID.2917-18; ECF No. 104-6, PageID.2947; ECF No. 104-2, PageID.2872-74.) CBP management was not provided similar negative reports about the five males promoted. (ECF No. 104-4, PageID.2917, 2924; ECF No. 104-6, PageID.2947; ECF No. 104, PageID.2873.)

Plaintiff argues that Danny's request for outside work was never approved, thus he violated CBP policy on a continuing basis. (ECF No. 111, PageID.3306.) However, Plaintiff fails to note the uncontradicted documentary evidence in the collective bargaining agreement governing Danny's employment stating that "[i]f there is no response within ten . . . calendar days from receipt [of a request to conduct outside employment], the employee may assume there is no objection and begin the outside employment." (ECF No. 117-2, PageID.4064.) Danny submitted his paperwork for outside employment, and the CBP pursued no further disciplinary actions against him.

(ECF No. 104, PageID.2825; ECF No. 110-1, PageID.3220; ECF No. 117-4, PageID.4072; ECF No. 117-2, PageID.4063.)

Plaintiff also points to an anonymous complaint filed against Danny in 2008 which accused him of sleeping while on the job. (ECF No. 117-8, PageID.4109.) Uncontradicted evidence shows that the CBP did not pursue disciplinary action for this anonymous allegation. (ECF No. 117-5, PageID.4086.) A CBP official asked him if he had slept on the job, to which Danny stated "no." (*Id.*)

In all, even drawing all reasonable inferences in Plaintiff's favor, *Moran*, 788 F.3d at 204, Plaintiff fails to present evidence that "no reasonable employer would have chosen the [male candidates] over [her]." *Rachells,* 732 F.3d at 668. Uncontradicted evidence shows Defendant made a reasonable and non-discriminatory choice in selecting candidates with superior disciplinary records, fewer (if any) reports of hostility and complaints toward secondary job duties, and unique leadership backgrounds. *Id.*

Furthermore, even if Plaintiff were deemed to have been equally as qualified as the four male candidates, she does not present "other probative evidence of discrimination" that could justify Title VII liability. *Id.* Plaintiff offers no direct evidence of discrimination. For instance, there is no "facially discriminatory employment policy or a . . . decision maker's express statement" that Plaintiff was not promoted due to her sex. *R.G & G.R. Harris Funeral Homes, Inc.*, 884 F.3d at 571.

Plaintiff also fails to present evidence of "a discriminatory atmosphere." *Rachells,* 732 F.3d at 669. She does not show that Defendant took prejudicial employment actions against women outside the 2011 promotions, nor does she show that Defendant received several complaints of sex discrimination prior to the promotions. *See id.*

21

Plaintiff does not present evidence that CBP employees and supervisors customarily made sexist remarks or repeatedly gave preferential on-the-job treatment toward men. *See Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 393-94 (6th Cir. 2009); *see also Bartlett v. Gates*, 421 F. App'x 485, 491-92 (6th Cir. 2010) (noting the importance of discriminatory comments). Further, the record is devoid of facts showing that Defendant's proffered explanations for not promoting Plaintiff, her disciplinary record and negative work attitude (to name two), were not actually used and considered in Defendant's promotion decisions. *See Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1023 (6th Cir. 2000); *see also Bartlett*, 421 F. App'x at 492. No other male or female promoted by Defendant had a similar history of disobeying direct orders or overtly disapproving of whole categories of work, and one male candidate who was reported to harbor similar negative attitudes was not promoted in 2011. (ECF No. 104-4, PageID.2924; ECF No. 104-6, PageID.2947; ECF No. 104-2, PageID.2873; ECF No. 104, PageID.2812; ECF No. 110-1, PageID.3212.)

Plaintiff argues evidence of sex discrimination can be found in Defendant's treatment of other women in the 2011 promotion process. (ECF No. 111, PageID.3310-11.) She points to the CBP's treatment of two women specifically, Electrica and Emily. (*Id.*) This argument is unsuccessful. First, the parties agree that the CBP promoted two women in 2011, both of whom had significant qualifications and no disciplinary history. (ECF No. 104, PageID.2822-24; ECF No. 110-1, PageID.3219.) The 2011 promotion program did not exclude women from the process; males were not featured as the exclusive candidates for consideration and possible promotion. (ECF No. 104, PageID.2822-24; ECF No. 110-1, PageID.3219.)

Electrica was actually promoted in 2011. (ECF No. 104, PageID.2823-24; ECF No. 110-1, PageID.3219.) Despite this fact, Plaintiff asserts Defendant discriminated against her by promoting her in August 2011 instead of June 2011. (ECF No. 111, PageID.3310.) This is a peculiar position given that Plaintiff, in another portion of her brief, forcefully argues that the 2011 promotions were "a single . . . process" with the same promotion criteria and applicant pool. (*Id.*, PageID.3290-91.) Further, Defendant's port director testified that he believed Electrica was on a special assignment and out of state at the time of the June 2011 promotions. (ECF No. 104-2, PageID.2878-79.) Based on the uncontradicted record, Defendant's treatment of Electrica does not present a triable issue of fact on whether Defendant discriminated against Plaintiff due to her sex. *Anderson*, 477 U.S. at 248; *Rachells,* 732 F.3d at 668.

Plaintiff argues Emily was not promoted in either June or August 2011. (ECF No. 111, PageID.3311.) Nonetheless, it is uncontested that Emily was promoted the next year in 2012. (ECF No. 83-1, PageID.2540.) Emily transferred to Detroit in 2009 from a station in Newark, New Jersey. (ECF No. 81-7, PageID.2461.) Defendant's port director offered uncontradicted testimony that Emily had "very limited land border experience" at the time of the 2011 promotions; he believed Emily needed more experience to "know the operation well enough [so] [she] could actually run a shift and be a supervisor." (ECF No. 81-3, PageID.2414.) In 2011, Emily "needed more time in the port [of Detroit] before she was . . . ready to be supervisor," (*id.*), which she became the next year. (ECF No. 83-1, PageID.2540.) Plaintiff offers no evidence to undermine this explanation. No reasonable inferences in Plaintiff's favor, *Moran*, 788 F.3d at 204, demonstrate that Emily's treatment supports an allegation of discriminatory animus

23

against Plaintiff. *Rachells,* 732 F.3d at 668. Summary judgment is warranted for Plaintiff's single-motive sex discrimination theory.

### C.  Plaintiff's Claim of Mixed-Motive Sex Discrimination

Plaintiff argues that, in the event her single-motive sex discrimination claim fails, the court should analyze her claim under a mixed-motive theory. (ECF No. 111, PageID.3311.) Congress expanded the Civil Rights Act in 1991, making it unlawful to use sex as "a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). If a plaintiff shows "(1) the defendant took an adverse employment action against the plaintiff; and (2) . . . sex . . . was a motivating factor" but not the only reason justifying the adverse action, the plaintiff can obtain "declaratory relief, injunctive relief, and attorney's fees." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 397, 440 (6th Cir. 2008) (citing 42 U.S.C. § 2000e-5(g)(2)(B)); *accord Griffin v. Finbeiner*, 689 F.3d 584, 595 (6th Cir. 2012).

Plaintiff fails to bring a triable claim under a mixed-motive theory. First, she argues that Defendant did not identify specific instances where Plaintiff demonstrated inadequate leadership skills other than her 2007 suspension for disobeying a direct order. (ECF No. 111, PageID.3313-14.) The court cannot ignore, however, that CBP managers stated in uncontradicted testimony that Plaintiff's overt refusal to follow orders in 2007 was a "huge problem," (ECF No. 104-4, PageID.2925); it demonstrated Plaintiff did not have "superior leadership qualities" and showed Plaintiff putting her needs above those of the agency. (*Id.*; ECF No. 104-2, PageID.2872.) Courts are especially hesitant to challenge or overrule candidate evaluations when employers select personnel to occupy leadership positions. *See Browning*, 436 F.3d at 698; *Wrenn*, 808

24

F.2d at 502. Furthermore, it is uncontradicted that a CBP manager received a report from the summer of 2007 that Plaintiff refused a superior's direction to assist another officer preparing to take leave. (ECF No. 104, PageID.2812-13; ECF No. 110-1, PageID.3213; ECF No. 104-4, PageID.2919-20.) It is also uncontradicted that CBP management received reports Plaintiff showed a dislike for secondary work and complained about it to coworkers and supervisors. (ECF No. 104, PageID.2812; ECF No. 110-1, PageID.3212; ECF No. 104-4, PageID.2917; ECF No. 104-6, PageID.2947; ECF No. 104-2, PageID.2874.)

Plaintiff also argues that a preliminary applicant score, aggregated to produce an initial applicant pool, demonstrates Defendant's promotions discriminated against women. (ECF No. 111, PageID.3314; ECF No. 104, PageID.2817-18; ECF No. 110-1, PageID.3216-17.) Uncontested evidence shows otherwise. While score numbers were not provided, the preliminary list ranked three men ahead of Plaintiff, none of whom were selected. (ECF No. 81-5, PageID.2438-39.) At least nine males were listed ahead of Electrica, a female who was selected. (*Id.*, PageID.2239-41.) The candidates' initial score listings do not illustrate discriminatory intent.

Plaintiff again claims Electrica was better qualified than two males promoted in June 2011. (ECF No. 111, PageID.3314.) As previously discussed, Electrica was promoted in 2011, and Defendant's port director believed she was on special assignment for the first step of the promotion cycle, which was only two months before the second step. (ECF No. 104, PageID.2823-24; ECF No. 110-1, PageID.3219; ECF No. 104-2, PageID.2878-79.) Another female was promoted in the first step, (ECF No. 104, PageID.2819-20; ECF No. 110-1, PageID.3217-18.), and Plaintiff presents no

evidence the end result of the 2011 promotion process would have been any different had Electrica been promoted in June instead of August.

Plaintiff does not present evidence that Defendant's justifications for denying her a promotion–her disciplinary record of disobeying a direct order, reports of complaints and negative attitudes, and the other candidate's leadership experiences–were not actually used in Defendant's promotion decisions. *See Baxter Healthcare Corp.*, 533 F.3d at 404-06. Nor does Plaintiff present evidence of sexist statements or attitudes, whether by a supervisor or any other CBP employee. *See Griffin*, 689 F.3d at 595. In all, while Plaintiff disputes Defendant's opinion on which candidates would best manage its organization, she "present[s] no evidence that [Defendant] did not honestly believe [its business judgments] . . . or that [Defendant] relied on unlawful motives." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 714 (6th Cir. 2006). Summary judgment in Defendant's favor is warranted.

### D. Exhaustion of Administrative Remedies

Defendant argues that Plaintiff did not exhaust her administrative remedies. (ECF No. 104, PageID.2830-34.) According to Defendant, the two steps of the 2011 promotions were two separate promotional rounds, and Plaintiff failed to exhaust administrative remedies for the June 2011 promotions. (*Id.*) For Title VII claims, federal employees "must initiate contact with an EEO Counselor within 45 days of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002) (quoting 29 C.F.R. § 1614.105(a)(1)). However, with the court granting summary

judgment as to the entirety of Plaintiff's claim, the court will not conduct additional analysis into the issue of administrative exhaustion.

## IV. CONCLUSION

Plaintiff does not present sufficient evidence to overcome summary judgment. She has not identified a genuine material dispute of fact that Defendant's non-discriminatory justifications were pretextual, and she has not presented evidence adequate to indicate that Defendant's actions were gender-motivated under a mixed-motive theory. Accordingly,

IT IS ORDERED that Defendant's "Motion for Summary Judgment" (ECF No. 104) is GRANTED. Summary judgment in favor of Defendant is granted for Plaintiff's claim of Sex Discrimination Under Title VII (Count I).

s/Robert H. Cleland                                /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  December 21, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 21, 2020, by electronic and/or ordinary mail.

s/Lisa Wagner                                /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\14-12107.JONES.MotionforSummaryJudgment.RMK.RHC.4.docx